**In re ECKLUND & SWEDLUND DEVELOPMENT CORPORATION, Debtor.**

**ECKLUND & SWEDLUND DEVELOPMENT CORPORATION, Plaintiff,**

**v.**

**HENNEPIN FEDERAL SAVINGS & LOAN ASSOCIATION OF MINNEAPOLIS, a United States corporation, Northwestern National BankWest, B–T Investors, Inc., and the State of Minnesota, Defendants.**

Bankruptcy 4–80–254(O).
Adv. No. 4–81–154(O).

United States Bankruptcy Court,
D. Minnesota.

July 28, 1981.

**452**

William I. Kampf, St. Paul, Minn., for plaintiff.

John R. Carroll, Minneapolis, Minn., for defendant Hennepin Federal Savings & Loan.

Robert L. Schnell, Jr., Minneapolis, Minn., for defendant Northwestern Nat. Bank-West.

KENNETH G. OWENS, Bankruptcy Judge.

This adversary proceeding was commenced by plaintiff/debtor in reorganization seeking authority to exercise its claimed right of redemption from a prepetition foreclosure sale of two building lots under a first mortgage held by Hennepin Federal Savings & Loan Association of Minneapolis, a sale of the mentioned lots, and disposition of the proceeds in payment of that mortgage and other encumbrances held by the other named defendants in the action.

On the hearing of the motion of plaintiff for expedited relief held on June 8, 1981, William I. Kampf appeared for plaintiff, John R. Carroll for defendant Hennepin Federal Savings & Loan (hereafter Hennepin), and there was no appearance by any other named party. It was then agreed by counsel there is no dispute as to the facts and the sole issue, one of law, is whether 11 U.S.C. Section 362(a) operated to toll, or suspend, the running of the statutory period of redemption provided by M.S.A. Section 580.23 following the mortgage sale, which statutory period would otherwise have expired on January 29, 1981. Accordingly the matter was submitted at that time subject to the receipt of briefs from counsel for the appearing parties which have since been received.

Following hearing, defendant Northwestern National BankWest through its attorney Robert L. Schnell, Jr. filed its answer which in essence joins in plaintiff's prayer for relief urging as a consequence that Northwestern's subordinate mortgage on the tract still survives. I do not consider that such answer affects the prior submission and the matter is for determination on the briefs already filed.

Following the expedited hearing and pursuant to a stipulation by counsel for all of the parties to this controversy, an order was made permitting sale of the two lots free and clear and providing there should be paid from the proceeds all outstanding real property taxes, the balance owing on the

mortgage to defendant Hennepin Federal as if the property were subject to redemption, and, providing the remainder of the fund be held in an appropriate escrow subject to further order of this Court.

The plaintiff and an associated company were engaged in custom residential development and construction. On May 20, 1977, plaintiff executed a first mortgage to Hennepin covering a number of unimproved lots in Hennepin County owned by debtor to secure a loan of $75,000, the mortgage by its terms being due and payable on November 20, 1978. From time to time, payments were made on the mortgage to obtain partial releases for use and residential construction. When the mortgage went into default, the two unimproved lots the subject of this controversy remained as a security for payment of the balance of the mortgage amount, $2,569.46.

On November 21, 1979, the mortgage being in default, Hennepin Federal commenced foreclosure proceedings by advertisement as permitted by M.S.A. Section 580, and on January 29, 1980, the sheriff of Hennepin County sold the same to Hennepin for the amount of the remaining indebtedness and issued his sheriff's certificate and foreclosure record which were filed for public record with the Register of Deeds of Hennepin County on January 30, 1980. The period for redemption under the mentioned statute was twelve months from the date of sale and the statutory period accordingly expired on January 29, 1981.

Within a few weeks following the sale, the debtor, on February 27, 1980, filed its petition for reorganization under Chapter 11 of the Bankruptcy Code. No positive action was taken by debtor in connection with the foreclosure or redemption until May 28, 1981 when the present complaint was filed.

## DISCUSSION

On the filing of its petition under Chapter 11 of the new Bankruptcy Code, debtor obtained the benefits of the so-called automatic stay afforded by 11 U.S.C. Section 362(a), and the question is whether that stay operated to toll or suspend the running of the period of redemption afforded by state law.

This Court had occasion to deal with a similar factual situation under Chapter XI of the former Bankruptcy Act. The memorandum and order dated May 23, 1980 was entered in the case of *Northwestern National Bank of Minneapolis v. Minnesota Urban Developers, Inc.,* 17 B.R. 443, and dealt with a prepetition sale in foreclosure by advertisement and the subsequent running of the period of redemption.

The memorandum tracked prior law in connection with foreclosures by advertisement in Minnesota and reached certain conclusions.

1. Based upon the decision of Judge Nordbye in *In re Klein*, D.Minn., 9 F.Supp. 57, it was concluded that the final act involved in a foreclosure by advertisement was the foreclosure sale and thereafter absent redemption a mere lapse of time would vest title in the purchaser. Accordingly the only right or interest remaining in the mortgagee following sale was the right to redeem.

The proceeding in *Klein* being a farmer relief proceeding under then Section 75 of the Bankruptcy Act, (11 U.S.C. § 203), Judge Nordbye held that a statutory stay as to "proceedings against the debtor or the debtor's property" did not operate to toll or suspend the mere running of time. In that conclusion, he of course relied upon the effect of Minnesota law which after sale left no necessity for the institution of any further proceedings or acts precedent to the vesting of title.

2. In *Food Associates, Inc.,* D.Minn., No. 3–59–499, also an unreported opinion involving a prepetition foreclosure and sale by advertisement, the then bankruptcy referee was held to lack jurisdiction acting ex parte to toll the period of redemption for the benefit of the bankruptcy trustee. Incident to that determination, Judge Nordbye necessarily determined that the preclusive implied stay arising by reason of assumption of jurisdiction, See *Isaacs v. Hobbs Tie*

*& Timber Co.*, 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645, did not preclude the running of the period of redemption.

It is important to note of course that Judge Nordbye's decision as to lack of jurisdiction to act ex parte did not foreclose the possibility which he expressly recognized that the bankruptcy court as a court of equity could grant appropriate equitable relief prior to the expiration of the period of redemption after first obtaining personal jurisdiction and after notice and hearing.

3. In the *Urban Developer's* case, this Court dealt with the express automatic stay incorporated in the Bankruptcy Rules effective in 1974. The automatic stay found in Bankruptcy Rule 11–44 as there applicable was expressed in the following terms:

> "Any proceeding under Rule 11–6 . . . shall operate as a stay of the commencement or the continuation of any court or other proceeding against the debtor, or the enforcement of any judgment against him, or of *any act or the commencement or continuation of any court proceeding to enforce any lien against his property* . . . ." (emphasis added)

It was held in *Minnesota Urban Developers, Inc.* that on the basis of the mentioned prior authorities and the plain language of the rule, such rule did not operate to toll or suspend the mere running of time, and that accordingly under Minnesota law time ran its course and the equity of redemption was terminated. Not only did the plain language of the stay provision compel that conclusion but this Court particularly called attention that such language omitted any indication of a "suspension" or "tolling" and that neither Congress nor the makers of the Rules would have had difficulty in expressing such a purpose as is clear from the provisions of former Section 75 of the Bankruptcy Act, now dormant, and with respect to "suspension" of statutes of limitation as expressed in Sections 391 and 676 of the Bankruptcy Act.

It should be noticed that Section 11(e) of the Bankruptcy Act (then 11 U.S.C. Section 29e) which did provide a possible extension as follows:

> "where in any proceeding, judicial or otherwise, a period of limitation is fixed, either in such proceeding or by applicable Federal or State law, for taking any action, filing any claim or pleading, or doing any act, and where in any such case such period had not expired at the date of the filing of the petition in bankruptcy, the receiver or trustee of the bankrupt may, for the benefit of the estate, take any such action or do any such act, required of or permitted to the bankrupt, within a period of sixty days subsequent to the date of adjudication or within such further period as may be permitted by the agreement or in the proceeding or by applicable Federal or State law as the case may be."

was neither relied upon nor affected the result, the computed time having in each instance expired.

The Bankruptcy Reform Act of 1978 has effected substantial changes in the substantive and procedural law applicable to bankruptcy cases. The resulting Bankruptcy Code has now unified the stay provisions applicable to various proceedings in bankruptcy in Section 362 (11 U.S.C. Section 362). So far as applicable here, it provides as follows:

> "Section 362. Automatic stay.
>
> "(a) * * * a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—
>
> > "(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; * * *
> >
> > "(3) any act to obtain possession of property of the estate or of property from the estate;
> >
> > "(4) any act to create, perfect, or enforce any lien against property of the estate; * * * * "

It is unquestioned that the automatic stay is a concept fundamental to the Bankruptcy Code and intended as a fundamental debtor protection. See H.R.Rept.No. 95–595, 95th Cong., 1st Sess. 340 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. The fact that it is intended to be a fundamental protection does not eliminate the need to discover its proper scope and meaning.

The right or property to be protected in the present case is the same as was that in *Minnesota Urban Developers.* Under Minnesota law, that is the right to redeem. That such right of redemption is property of the estate is unquestioned, as that concept is at least as inclusive as under prior law.

The starting point for any determination of scope of Section 362 is the language of the section which on its face prohibits the commencement or continuation "of a judicial, administrative, or other proceeding", and of any "act", either to obtain possession of property of the estate, or to create, perfect, or enforce any lien against property of the estate. Thus in language the stay is in all substantial respects identical to the prior applicable Bankruptcy Rules respecting such stays. While prior authority dealing with the Bankruptcy Act and Rules is certainly not binding, it has a very persuasive effect when the language of the statute is identical or essentially the same. All of the considerations that have been recited as involved in the prior cases in Minnesota are also applicable here. The simple word "stay" is not appropriate to accomplish what is in fact a suspension or tolling of time. Those apt terms "suspension", or "tolling" were certainly available to the drafters of the Bankruptcy Code as they were to the drafters of the Bankruptcy Act and the Bankruptcy Rules, and it is instructive that they were not employed in Section 362(a).

It is also instructive to consider that the stay to its full scope is automatic and does not reduce or even touch the Court's jurisdiction as a court of equity on a proper showing following notice and hearing to extend the time for exercise of redemptive rights. Such is not a new concept since it was recognized under the Act in *Food Associates, Inc.,* supra. Also still present is another provision specifically relating to extension of time to redeem. The specific provision, a direct successor of previously mentioned Section 11(e) of the Bankruptcy Act is 11 U.S.C. Section 108 which in applicable subparagraph (b) provides:

"Section 108. Extension of time. * *

"(b) Except as provided in subsection (a) of this section, if applicable law, an order entered in a proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—

"(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; and

"(2) 60 days after the order for relief."

I conclude in agreement with the analysis of Guy J., District Judge in *Bank of the Commonwealth v. Harold R. Bevan, et al.,* E.D.Michigan D.C., 13 B.R. 989, 7 B.C.D. 557 that the matter of suspension, or its equivalents "extension" or "tolling" is governed by the mentioned Section 108 of the Code, both by reason of similarities in structure and language to the provisions of the Bankruptcy Act dealt with in previous cases but also as indicated by Judge Guy that:

"While a stay tolling the running of the statutory period would give the debtor greater protection than that contemplated by Section 108, this court finds that where one section of the Bankruptcy Code explicitly governs an issue, another section should not be interpreted to cause an irreconcilable conflict. *Richards v. United States*, 369 U.S. 1, 11 [82 S.Ct. 585, 7 L.Ed.2d 492] (1961)."

I conclude that Section 362(a) did not operate to stop the running of time provided by the Minnesota statute, that the time provided for extension by Section 108 in the circumstances of this case is the end of the provided one year period long since passed and the debtor not having taken effective action either to effect a redemption, or to seek in proper fashion after notice and hearing the aid of this Court as a court of equity to obtain if warranted an extension of such time is now foreclosed.

This result is not contrary in substance to that reached by Judge Dim of this Court after notice and hearing as a court of equity in his two decisions in *In re Johnson*, (*Moratzka v. Lanesborough State Bank*), Bkrtcy., 8 B.R. 369 and 371. See also *Bank of the Commonwealth*, supra, footnote 13.

The present analysis is in agreement with *Bank of Commonwealth*, supra, and accords with the views of Frank R. Kennedy who had intimate knowledge of the process which resulted in the Bankruptcy Code. See Kennedy, Automatic Stays Under the New Bankruptcy Law, 12 U.Mich.J.L.Ref. 1, 16 n.56 (1978).

The automatic stay does stop any act to obtain possession of property of the estate. Here the expiration of the period of redemption vested absolute title in the defendant with the result that the right to redeem was terminated and accordingly such "property of the estate" ceased to exist. Since the property involved is vacant land, there is no dispossession involved, and it would not appear that the Court should indulge in the unneeded action of determining the right to now take possession.

The foregoing pursuant to Bankruptcy Rule 752(a) shall constitute the Court's findings of fact and conclusions of law.

ACCORDINGLY, IT IS ORDERED:

1. That defendant Hennepin Federal Savings & Loan Association pursuant to its foreclosure by advertisement, and on the expiration of the period of redemption on January 29, 1981 was vested with absolute title to the two lots described as Lots One (1) and Two (2), Block One (1), Duck Lake Estates, according to the plat thereof on file of record in the Office of the County Recorder for Hennepin County, Minnesota.

2. That defendant Hennepin Federal Savings & Loan Association has full right and title in and to the remainder of the proceeds of the sale of the said lots now in escrow.

3. The escrowees, counsel for the parties, William I. Kampf and John R. Carroll, are authorized and directed to release the escrow deposit to Hennepin Federal Savings & Loan Association of Minneapolis.